IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| EDWARD LEE GONZALES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-CV-227-MJT-CLS |
| | § | |
| PATRICK H. MCDONALD and | § | |
| ANTHONY GRANTHAM, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION ON PLAINTIFF AND DEFENDANT MCDONALD'S CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. #104, #116)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. Tex. Loc. R. CV-72. Pending before the court is Defendant McDonald's Motion for Summary Judgement (doc. #104), and Plaintiff's construed Cross-Motion for Summary Judgment (doc. #116). After review, the undersigned recommends granting Defendant McDonald's motion, and denying Plaintiff's motion.

### I. Background

#### A. Plaintiff's Claims and Procedural History

On June 24, 2022, Plaintiff Edward Lee Gonzales and his wife, Michele Renee Gonzales, drove their friend Tom Royston, using his car, to Exceptional Emergency Center in Orange, Texas. A dispute arose between Plaintiff and staff resulting in Mr. and Mrs. Gonzales leaving the facility. A bystander drove them to Mr. Royston's house to pick up their car. Hours later Mr. and Mrs. Gonzales returned to retrieve their belongings from Mr. Royston's car. Plaintiff

admits he proceeded to take pictures of license plates in the parking lot and told staffers at the facility that they had lied to him earlier and "I got you." A staff member called the police, and Mr. Gonzales was ultimately pulled from his vehicle and arrested by Orange Police Officers McDonald and Grantham.  In his complaint, Plaintiff alleges substantial physical injuries resulting from the arrest such as a broken arm, a dislocated elbow, and torn ligaments.

Mr. and Mrs. Gonzales, proceeding *pro se*, filed this action on June 12, 2023, against twenty defendants alleging claims under 42 U.S.C. §1983 for violations of their constitutional rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments, as well as state law violations under the Texas Penal Code.  (Doc. #1 at 15.)  The only remaining claim against Officer McDonald (hereinafter "Defendant") is an excessive force claim alleged by Mr. Gonzales (hereinafter "Plaintiff").  (Doc. #73 at 5-6.)  Defendant filed the instant Motion for Summary Judgment on March 20, 2024, arguing (1) that Plaintiff does not plead, nor provide evidence that Defendant utilized excessive force, and (2) that Defendant is entitled to qualified immunity from this claim.  (Doc. #104.)

Plaintiff filed an "Objection of Truth" to this motion on April 18, 2024.  (Doc. #113.) After review, the undersigned could not determine if this filing was a response or a cross-motion for summary judgment.  The undersigned therefore ordered Plaintiff to file an amended version of the document identifying whether it was a response or a cross-motion.[1]  (Doc. #114.)  On April 26, 2024, Plaintiff filed an "Amended Pleading for Summary Judgment for P.H. McDonald Excessive Force Claim."  (Doc. #116.)  For the purposes of this Report and Recommendation,

---

[1] The original "Objection of Truth" was fifty-five pages excluding attachments.  (Doc. #113.)  Under the Local Rules, a motion for summary judgment and a response are both limited to thirty-pages respectively.  E.D. TEX. CV-7(a)(1).  The undersigned granted Plaintiff leave to submit an amended filing with forty-pages.  (Doc. #114.) Plaintiff complied with this page-limit in his subsequent filing.  (Doc. #116.)

the undersigned considers this a response and a cross-motion.[2] Defendant timely filed a response to the cross-motion. (Doc. #119.) This matter is now ripe for review.

### B. Defendant McDonald's Factual Assertions

In his motion, Defendant retells the events leading up to and following Plaintiff's arrest on June 24, 2022, largely by quoting from Plaintiff's complaint and incorporating video evidence discussed in detail below. (Doc. #104 at 3-14.) This recitation of events matches the undersigned's summary found *supra* I.A and in past Reports and Recommendations. (Docs. #45 at 2-3, #61 at 2-3, #65 at 1-2.) Put simply, Defendant asserts that he arrived on the scene to investigate Plaintiff after Exceptional Emergency Center staffers made their second 911 call about Plaintiff that evening, that Plaintiff did not cooperate with the investigation, and he was ultimately arrested with as minimal of force as was possible in the situation.

Of relevance to the issues before the court, Defendant claims the pertinent video footage shows that he grabbed Plaintiff by his right arm, and Plaintiff does not claim to have any injuries on his right arm. (Doc. #104 at 8.) Defendant asserts Plaintiff tensed up during the arrest and kept moving his hand to his front to avoid being hand-cuffed. (*Id.*) Defendant contends Plaintiff did not appeared injured, showing no favor to either arm. (*Id.* at 12.) Defendant also provides a detailed interpretation of how exactly each officer touched Plaintiff, which will be addressed below as the undersigned reviews the video footage. (*Id.* at 10-12.)

### C. Plaintiff's Factual Assertions

Plaintiff largely agrees with Defendant's factual assertion, often including language from Defendant's Motion for Summary Judgment verbatim. Of relevance to these motions, Plaintiff

---

[2] Defendant correctly notes that in her prior order, the undersigned admonished Plaintiff to identify whether his "Objection of Truth" was either a response or a cross-motion. (Doc. #114.) As Plaintiff is proceeding *pro se*, the undersigned will construe Plaintiff's filing (doc. #114) as a response to Defendant McDonald's Motion for Summary Judgment and a Cross-Motion for Summary Judgment.

disagrees with Defendant on some material issues. Plaintiff contends that he was not resisting arrest and was fully cooperative throughout the events of the night at issue. (Doc. #116 at 13, 23, 24, 41.) He asserts substantial and long-lasting physical injuries, such as a broken arm, dislocated elbow, torn ligaments, and back pain. (*Id.* at 66.) Plaintiff also relitigates the factual background about the constitutionality of the arrest, but there is no pending unconstitutional seizure claim. (*Id.* at 12.)

### D. Video Footage

Numerous videos of the events are included in the record which the undersigned will now summarize.[3] Around 11:08 pm on June 24, 2022, Defendant McDonald arrived at Exceptional Emergency Center. (*Id.*) Based on his body cam footage, Defendant McDonald's police car was behind Mr. and Mrs. Gonzales' car, blocking the car in its parking spot. (Video A at 04:44.) Mrs. Gonzales was in the driver's seat. Mr. Gonzales was in the passenger's seat. Defendant McDonald greeted Mr. and Mrs. Gonzales from the driver's side window and asked if they were having a problem, to which Mrs. Gonzales replied that they were leaving. (Video A at 04:47-04:52.) Defendant Grantham came to the passenger's side door. (Video A at 04:47-04:52, Video B at 01:00-01:10.) Mr. Gonzales attempted to explain what had happened that night, but apparently did not think Officer McDonald was listening to him. (Video A at 04:54-04:56.) He asked Officer McDonald, "can you look at me?" (*Id.*) Officer McDonald replied, "don't come at me with an attitude." (*Id.* at 04:57-5:00.) Mr. Gonzales stopped talking and Mrs. Gonzales then explained to Officer McDonald what had happened that night. (*Id.* at 05:05-05:47.) Officer McDonald listened to Mrs. Gonzales' explanation, occasionally saying "yes mam." (*Id.*)

---

[3] The court has at least twelve different videos, some of which appear to be body camera footage and some of which appear to be dashboard camera footage. The undersigned has reviewed all videos. For the pertinent excerpts of Defendant McDonalds's interactions with Mr. Gonzales, the undersigned primarily relies on two files labeled PatrickMcDonald_202206242307_WFC1125880_31745355 (hereinafter "Video A") and AnthonyGrantham_202206242308_Unit65_211626252 (hereinafter "Video B").

Officer McDonald then asked Mr. and Mrs. Gonzales for their IDs in case Exceptional Emergency Care wanted to press criminal trespass charges against them. (*Id.* at 05:56-05:58.) Mr. Gonzales replied "I'm good" indicating he would not provide Officer McDonald with his ID. (*Id.* 06:03.) Officer McDonald then told Mr. Gonzales to step out of the car. (*Id.* at 06:07.) Mr. Gonzales said no, and that "ain't happening." (*Id.* at 06:08.) Then, Officer McDonald asked Mrs. Gonzales to unlock the car, but she said no. (*Id.* at 06:11-06:25.) Officer McDonald reached into the car from the driver's side window and unlocked the doors. (*Id.* at 06:28.) Officer Grantham then opened the passenger-side door and Mr. Gonzales asked Officer Grantham why he needed to show an ID. (Video A at 06:36-06:37; Video B at 2:30-02:40.) Officer Grantham reiterated it was for a possible criminal trespass charge. (Video A at 06:37.) Both Officer Grantham and Mr. Gonzales appeared relatively calm while talking. At this point Officer McDonald came to the passenger's side of the car and directed Mr. Gonzales to step out of the vehicle and "not to resist." (*Id.* at 06:37-06:40.) Officers McDonald and Grantham then immediately pulled Mr. Gonzales out of the car, with Defendant McDonald pulling Mr. Gonzales' right side. (Video A at 06:40-06:46; Video B at 2:40-2:47.)

As Officers McDonald and Grantham held him against the side of the car, Mr. Gonzales said, "Oh yeah, I like that, oh yeah." (Video A 06:50-07:01.) Officer McDonald spoke into his walkie talkie and said, "we have one resisting." Mr. Gonzales, still being held against the vehicles responded, "I'm not resisting." (Video A at 07:09.) Officer McDonald escorted Mr. Gonzales to the front of Officer Grantham's vehicle. (Video B at 02:47.) Mr. Gonzales told Officer McDonald that his elbow was dislocated, he "heard the ligaments or something… pop," and his left arm hurt badly. (Video A at 07:35-07:36, 08:39-08:44.) He then gave Officer McDonald his full name. (Video A at 09:58.) Overall, Mr. Gonzales appeared respectful and cooperative, even while debating the officers on their rationale for arresting him. (*Id.* at 07:40-

5

08-35.) Officer McDonald called for an ambulance, and, after an initial medical review, Captain Longlois ordered Defendant Grantham to take Mr. Gonzales to the hospital. (*Id.*)

## II. Legal Standard

### A. Summary Judgment

#### i. *Generally*

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Stults v. Conoco, Inc.* 76 F.3d 651, 655-56 (5th Cir. 1996) (citations omitted). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). A fact is material when it is relevant or necessary to the ultimate conclusion of the case. *Id.* at 248. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.); *cert. denied*, 506 U.S. 832 (1992).

Once the moving party has carried its burden of demonstrating that the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. However, the non-movant may not rest on mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of North Texas,*

*P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). The court must consider all the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak*, 953 F.2d at 915–16 & n.7; FED. R. CIV. P. 56(c)(3) ("[T]he court need consider only the cited materials."). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23. "On cross-motions for summary judgment, [the court reviews] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 703 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 579, 214 L. Ed. 2d 342 (2023) (citing *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010)).

        ii.    *The Role of Video Evidence in Summary Judgment Motions*

The undersigned is guided by Fifth Circuit and Supreme Court precedent explaining the role of video evidence at the summary judgment stage. When the record includes video evidence, courts are not bound to accept facts contradicted by the video. *Crane*, 2022 WL

4592035, at *4 (citing *Harris v. Serpas*, 745 F.3d at 771).  To the extent that video evidence leaves certain facts ambiguous, courts must leave such ambiguities in materials facts to be resolved by the jury.  *Cf. Crane*, 2022 WL 4592035, at *4 (quoting *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021)) ("*Scott* was not an invitation for trial courts to abandon standard principles of summary judgment by making credibility determinations or otherwise weighing the parties' opposing evidence against each other any time a video is introduced into evidence."); *see also Scott v. Harris*, 550 U.S at 381 ("[The lower court] should have viewed the facts in the light depicted by the videotape.").

Additionally, the undersigned is guided by this district's Local Rules, which only require the undersigned to assume facts from the moving party that are *supported* by admissible evidence.  LOCAL RULE CV-56(c).  The undersigned need not assume facts from the moving party that are contradicted by admissible evidence, such as video evidence—regardless of whether those facts are also controverted by a response from the nonmoving party.  Therefore, the undersigned evaluates Defendant's claim that he is entitled to summary judgment on grounds of qualified immunity "in the light depicted by the videotape."  *Scott v. Harris*, 550 U.S. at 381.

### B. Qualified Immunity

The doctrine of qualified immunity protects officials, such as law enforcement officers, from civil liability for action taken in their official capacity as long as their conduct does not violate clearly established law of which a reasonable person would have known.  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam).  When a party moves for summary judgment asserting qualified immunity, the analysis involves a two-pronged inquiry.  *Aguirre*, 995 F.3d at 406.  First, "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right."  *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 655-

56 (2014)). Second, "whether . . . the right in question was 'clearly established' at the time of the violation." *Id.* (quoting *Tolan*, 572 U.S. at 656).

### i. *Constitutional Violation Prong*

Here, the alleged constitutional violation is excessive force. To prevail on his excessive force claim, Plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)).

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). In determining whether the force used to effect a seizure is "reasonable" under the Fourth Amendment, courts must apply a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interest' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Reasonableness is judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). Additionally, the reasonableness inquiry should account for the fact that law enforcement may have to make split-second judgments and, as an objective standard, disregard the officer's underlying intent or motivation. *Id.* at 396-97. Evaluating reasonableness requires close analysis of the facts and circumstances of a particular case, particularly the *Graham* factors which include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. at 8-9).

## ii. *Clearly Established Prong*

Even if a constitutional violation has been committed, qualified immunity shields officials from civil liability unless that right is clearly established, meaning that "a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances" will still be protected. *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). The purpose of the "clearly established" inquiry is to determine whether the officer "had fair notice that [his] conduct was unlawful." *Crane*, 2022 WL 4592035, at *8 (quoting *Brousseau*, 543 U.S. at 198). Qualified immunity applies unless the law clearly establishes that the official's conduct violated a federal right at the time the conduct took place. *Brousseau*, 543 U.S. at 194.

Importantly, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Crane*, 2022 WL 4592035, at *8 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Therefore, in considering the clearly established prong, the proper inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

### III. Discussion and Analysis

The Fifth Circuit has been clear that, when qualified immunity is evoked, a court must refrain from focusing on the merits of the underlying claim, and instead focus on whether the officer in question is entitled to qualified immunity. *Poole v. City of Shreveport*, 691 F.3d 624,

630 (5th Cir. 2012) (citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir.2009)). Courts have discretion to address either or both prongs of qualified immunity. *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022). The undersigned will address each in turn.

    A. Constitutional Violation

To establish an excessive force claim, a plaintiff must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). Where more than one police officer is involved in the use of force, as is the case here, the court must "evaluate each officer's actions separately, to the extent possible." *Poole*, 691 F.3d at 630 (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir.2007)). The undersigned will address the three factors in turn.

    *i.   The De Minimis Injury Threshold*

First, the undersigned finds Plaintiff overcomes the *de minimis* injury threshold required to overcome qualified immunity. A plaintiff can overcome the *de minimis* injury threshold with "even relatively insignificant injuries, and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Byrd v. Cornelius*, 52 F.4th 265, 274 (5th Cir. 2022) (citing *Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996)). For example, in *Byrd*, the plaintiff's allegation of fear and pain, along with alleged physical injuries, satisfied the *de minimis* threshold. *Id. But see Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (holding it was not an abuse of discretion for the district court to find a "sore, bruised ear lasting for three days" was only a *de minimis* injury).

Here, the parties primarily dispute whether Plaintiff suffered long-term physical injuries. Throughout this lawsuit and in his cross-motion, Plaintiff has accused Defendant McDonald of intentionally breaking his left arm and causing other injuries. (Doc. #116 at 8, 16.) Plaintiff

cites Exhibit E attached to his cross-motion to assert a material issue that Defendant McDonald broke his left arm. (*Id.* at 17.) Plaintiff claims he cannot afford to get the necessary MRIs to properly prove up injuries to his right side and his back. (*Id.* at 13.)

After review, the undersigned finds that Plaintiff's assessment of his Exhibit E is not supported by the record. Plaintiff's Exhibit E is medical records from the Medical Center of Southeast Texas from the night Plaintiff was arrested by Defendant McDonald. As attached to the motion, Exhibit E contains a "clinical impression" from 12:21 AM on June 25, 2022, where the physician finds a "left elbow fracture" and orders follow-up "with ortho." (Doc. #116 are 61.) As Defendant McDonald notes, Exhibit E to the cross-motion is an incomplete document. (Doc. #119 at 8.) In his own motion, Defendant included the remainder of these medical records as Exhibit J. (Doc. #104-1 at 19-21.) The evidence shows that after the initial clinical impression, Dr. Michael Kolcun made the following finding at 1:47 AM that same day:

> 3 views of the left elbow. There is no acute fracture or dislocation. Assessment for effusion is limited as the lateral view is performed and near complete extension. No obvious elbow joint effusion is present. Enthesopathy is seen along the medial humeral epicondyle. Calcifications are seen along the course of the radial collateral ligament, likely related to prior injury. There is no significant soft tissue swelling.

(*Id.* at 20.) Notably, at the case management conference (doc. #34) on September 12, 2023, Plaintiff submitted for the record a binder of exhibits (doc. #36), which included these medical records contained in both Plaintiff's Exhibit E and Defendant's Exhibit J. (Doc. #36 at 1-9.)

This situation is similar to *Garcia v. Bermea*. In *Garcia*, the plaintiff was parked in the driveway of an abandoned house with his car running. *Garcia v. Bermea*, No. DR-21-CV-004-AM-CW, 2023 WL 7361372, at *1 (W.D. Tex. Aug. 18, 2023), *R&R adopted*, No. DR-21-CV-004-AM/CW, 2023 WL 6394398 (W.D. Tex. Oct. 2, 2023). A police officer was called to the scene and engaged in conversation with the plaintiff. *Id.* The police officer asked for the plaintiff's identification, who declined arguing (falsely) that the driveway was his property. *Id.*

12

at 1, 3. The dispute escalated, and the officer arrested him for failure to show an ID. *Id.* at 2. The plaintiff claimed he was physically injured by the police officer and filed suit for, among other things, wrongful arrest, unconstitutional seizure, and excessive force. *Id.* at 3. The district court found the defendant was entitled to qualified immunity on the excessive force claim, in part, because the plaintiff "failed to submit *any* medical evidence of an injury." *Id.* at *15. Here, Plaintiff alleges various physical injuries which are not supported by the medical records.

The lack of medical records, however, is "not fatal" to an excessive force claim. *Benoit v. Bordelon*, 596 F. App'x 264, 269 (5th Cir. 2015). In *Benoit*, a prison guard grabbed the plaintiff by his collar, threw him to the floor, put his knee on the plaintiff's lower back, and choked him. *Id.* at 266. Plaintiff alleged his throat was sore for three days and that he experienced persistent backpain. *Id.* at 269. The "administrative comments on Benoit's medical grievances" diagnosed the issue as a lumbar strain, but the x-rays did not suggest any traumatic injury. *Id.* The Fifth Circuit held that the district court did not err in finding the temporary soreness around the plaintiff's throat and long-term back pain were more than *de minimis* injuries. *Id.*

Here, Plaintiff's physical injuries such as a broken arm, a broken elbow, back issues, and torn ligaments, are not supported by the medical records. After a liberal review of *pro se* Plaintiff's filing, however, the undersigned notes that Plaintiff asserted pain at the time of the arrest, and longer-term pain stemming from the event. The undersigned, therefore, finds that Plaintiff's injuries were more than *de minimis*.

### ii. *Excessiveness and Reasonableness of the Force*

Next, Plaintiff must show the above injury resulted directly and only from a use of force that was clearly excessive, and the excessiveness was clearly unreasonable. *Poole*, 691 F.3d at 628 (citing *Ontiveros*, 564 F.3d at 382). Inquiries into whether a use of force was excessive or

13

unreasonable are often addressed simultaneously. *Id.* (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). When an excessive force analysis is embedded in a motion for qualified immunity, the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity, even though the evidence is viewed in the light most favorable to the non-movant. *Roe v. Johnson County*, No. 3:18-CV-2497-B-BN, 2021 WL 321967, at *1 (N.D. Tex. Feb. 1, 2021) (noting the unique burden shift that occurs when a motion for summary judgment addressed the issue of qualified immunity). Put simply, Plaintiff must show Defendant McDonald used clearly unreasonable and clearly excessive force.

It is important to note that the court has already determined Plaintiff did not sufficiently plead any unconstitutional seizure claims under the Fourth Amendment. (Doc. #65 at 8 n.7, #73.) Pursuant to a lawful arrest, a police officer may employ force. Defendant contends that his use of force was reasonable and not excessive because he used the most minimal amount of force possible to arrest Plaintiff who had previously disobeyed Defendant's order to ID or get out of the car. (Doc. #104 at 22.) Defendant argues that "[s]urely, [he and Defendant Grantham] were not required to stand there all night, as Plaintiff refused every instruction, request and choice." (*Id.* at 20.) The undersigned is not persuaded by this argument. It was just under two minutes from when he approached Mr. and Mrs. Gonzales' vehicle to when he pulled Mr. Gonzales from the vehicle. (Video A at 04:47-06:40.) The amount of force and the timing of the application of force measured against the seriousness of Mr. Gonzales' refusal to provide ID is not congruent.

Defendant then posits that "the car could have been started and driven forward over the curb and onto the street, and regardless Plaintiff was fighting and/or resisting both officers when he was pulled out of the car, and as they attempted to handcuff him." (Doc. #104 at 20.) The undersigned sees no evidence that either Mr. or Mrs. Gonzales were attempting to flee the scene.

14

Both parties agree that Mrs. Gonzales, who was in the driver's seat, was cooperative. (Docs. #104 at 6, #116 at 17.)

Notably, Defendant McDonald told Plaintiff he was under arrest approximately one second before he pulled Plaintiff out of the car. (Video A at 06:40-06:42.) A reasonable jury could find this to be an unreasonable use of force. The undersigned also finds the video ambiguous as to whether Plaintiff tensed up and resisted the arrest, necessitating both officers to grab Plaintiff and hold him against the car. (*Id.* at 06:40-07:01; Video B at 02:40-03:00.) The undersigned finds that there are material issues of fact as to whether the force here was clearly excessive and unreasonable. Such questions of fact preclude the undersigned from finding Defendant is entitled to qualified immunity based solely on the first prong. *See, e.g.*, *Stewart v. Carmona*, No. 3:09-CV-731-O-BF, 2010 WL 5625851, at *6 (N.D. Tex. Dec. 15, 2010), *R&R adopted*, No. 3:09-CV-731-O, 2011 WL 208348 (N.D. Tex. Jan. 21, 2011) (finding fact questions as to whether a constitutional violation occurred precluded, pending further discovery, a finding that defendant was entitled to qualified immunity). But as previously noted, to deny Defendant McDonald qualified immunity, Plaintiff must overcome both prongs.

### B. Clearly Established

The Fifth Circuit has noted that "[t]he clearly established inquiry is demanding, especially in claims for excessive force." *Ramirez*, 44 F.4th at 292 (citing *Harmon v. City of Arlington*, 16 F.4th 1159, 1167 (5th Cir. 2021)). "[E]xisting precedent must 'squarely govern the specific facts at issue, such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the official did.'" *Id.* (citing *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020).

Additionally, a plaintiff bears the burden to make the showing that the right alleged to be violated was clearly established by precedent. *Roe*, 2021 WL 321967, at *1. A plaintiff meets

15

this burden by showing that "a robust consensus of persuasive authority… defines the contours of the right in question with a high degree of particularity." *Rogers v. Hall*, 46 F.4th 308, 312-13 (5th Cir. 2022). This rules applies equally to *pro se* plaintiffs. *See, e.g.*, *Goebel v. Perez*, No. 5-22-CV-01354-FB-RBF, 2023 WL 8707129, at *3 (W.D. Tex. Nov. 13, 2023), *R&R adopted*, No. CV SA-22-CA-01354-FB, 2023 WL 8705423 (W.D. Tex. Dec. 15, 2023).

Here, Plaintiff does not provide any authority on whether Defendant violated a clearly established right. Plaintiff's cross-motion addresses the issue of qualified immunity, but only provides cases addressing unreasonable seizures. (Doc. #116 at 34-39.) For example, Plaintiff cites at least three cases that discuss the legal concept of curtilage in relation to constitutional searches and seizures. *See, e.g.*, *Collins v. Virginia*, 584 U.S. 586, 138 S. Ct. 1663, 201 L. Ed. 2d 9 (2018) (holding a car parked in a driveway to be part of the plaintiff's curtilage, rending the automobile exception to search and seizures inapplicable); *Florida. v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409 (2013) (addressing an unconstitutional search on an individual's curtilage); *California v. Ciraolo*, 476 U.S. 207 (1986) (addressing ariel observation of an individual's home and curtilage). The only claim before the court in the instant motions is an excessive force claim, not an unconstitutional seizure claim.

Plaintiff has not met the demanding clearly established prong to overcome Defendant McDonald's claim for qualified immunity. Defendant McDonald is, therefore, entitled to qualified immunity, and the undersigned cannot address the merits of the excessive force claim addressed in either motion before the court. *Poole*, 691 F.3d at 630 (citing *Ontiveros*, 564 F.3d at 382).

**IV.  Recommendation**

The undersigned finds that Defendant McDonald is entitled to qualified immunity on Plaintiff's excessive force claim against him. The undersigned, therefore, recommends that

Defendant McDonald's Motion for Summary (doc. #104) should be **GRANTED**, and Plaintiff's construed Cross-Motion for Summary Judgment (doc. #116) should be **DENIED**.

### V.     Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Without leave of court, **objections are limited to eight (8) pages**.  E.D. TEX. LOC. R. CV-72(c).

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 14th day of June, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE